**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

**GREGORY SIMS**

**VERSUS**                                                    **CIVIL ACTION NO. 10-00086-BAJ-DLD**

**MICHAEL J. ASTRUE,**
**COMMISSIONER OF SOCIAL**
**SECURITY**

## MAGISTRATE JUDGE'S REPORT

Plaintiff seeks judicial review of a final decision of the Commissioner denying his claim disability income benefits (DIB). In making that final decision, the Commissioner reached the fifth and final step of the five-step sequential disability analysis set forth in 20 C.F.R. §§ 404.1520(b)-(f) & 416.920(b)-(f),[1] finding that the plaintiff had a severe impairment of degenerative disc disease of the lumbar spine but that this impairment did not meet or medically equal a listing. The Commissioner also determined that the plaintiff was unable to perform his past relevant work as a merchandiser, construction worker, industrial cleaner, truck driver, stocker, or welder, but had the residual functioning capacity[2] to perform the exertional requirements of light work with some limitations. Applying the Medical-Vocational Rules and Section 404.1569 as a guide and framework for decisionmaking, the Commissioner determined that significant jobs existed in the national economy which plaintiff could perform despite the limitations in his RFC; therefore, plaintiff was not disabled within the meaning of the Social Security Act. (TR 8-14)

---

[1] *See, e.g.*, *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988).

[2] Residual functional capacity ("RFC") is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis, *i.e.*, 8 hours a day, for 5 days a week, or an equivalent work schedule. *Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001), *citing* SSR 96-8p.

*Background*

Plaintiff protectively filed for Title II disability insurance benefits ("DIB") on January 16, 2008, alleging a disability onset date of November 20, 2005, due to a work-related back injury/problem. This claim was denied initially on March 31, 2008, and after plaintiff filed a timely request for a hearing, the hearing subsequently was held on January 6, 2009, which resulted in an unfavorable decision on April 24, 2009. The plaintiff timely requested a review of this decision, and the Appeals Council denied the request for review on December 7, 2009, making the ALJ's decision the final decision of the Commissioner. (TR 1-4)

## *GOVERNING LAW*

In reviewing the Commissioner's decision to deny benefits, the Court is limited to a determination of whether the Commissioner's decision was supported by substantial evidence existing in the record as a whole and whether the Commissioner applied the proper legal standards. *E.g., Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988). In applying the "substantial evidence" standard, the Court must carefully scrutinize the record to determine if, in fact, substantial evidence supporting the decision does exist, but the Court may not reweigh the evidence in the record, nor try the issues *de novo*, nor substitute its judgment for the Commissioner's even if the evidence preponderates against the Commissioner's decision. *Id*. Substantial evidence means more than a scintilla, but less than a preponderance, and is such relevant evidence as a reasonable mind might accept to support a conclusion. *Id*. A finding of "no substantial evidence" will be made

only where there is a conspicuous absence of credible choices or an absence of medical evidence contrary to the claimant's position. *Id*.

The overall burden of proving disability under the Social Security Act rests on the claimant. *Jones v. Heckler*, 702 F.2d 616, 620 (5th Cir. 1983). If the claimant proves that she no longer is able to work in her past relevant work, then and only then does the burden shift to the Commissioner to establish that the claimant nonetheless has the ability to engage in other substantial gainful activity. *E.g., Rivers v. Schweiker*, 684 F.2d 1144, 1155-1156 & n.14 (5th Cir. 1982).

## *ISSUES*

The issue before this Court is whether the Commissioner's finding that Gregory Sims is not disabled is supported by the substantial evidence and was reached by applying the proper legal standards. 42 U.S.C. § 405(g).

Plaintiff argues for remand based on four statements of error:

1) That the ALJ "improperly downplayed medication side effects by ignoring evidence and assuming without any rationale that claimant 'does not take any significant medications.'"

2) That the ALJ "failed to evaluate whether Gregory Sims had a disability of any duration such that a closed period of disability should have been awarded."

3) That the ALJ "failed to analyze whether Mr. Sims can both obtain AND maintain employment as required by Fifth Circuit jurisprudence."

4) That the ALJ "failed to articulate reasons for discounting Mr. Sims' credibility."

(rec.doc. 11)

## DISCUSSION AND ANALYSIS

### *Issue 1 - Consideration of medication side effects*

Plaintiff alleges that the ALJ "completely misconstrued" the evidence relating to the side effects of plaintiff's medications when the ALJ opined that the plaintiff did not take "significant medications." (TR 13, rec. doc. 11) In support of this contention, plaintiff points to his hearing transcript wherein plaintiff testified that Amrix, a "muscle relaxer," put him to sleep "from noon on." Plaintiff testified that he took the muscle relaxer "like one, one time a day or as needed, and that's the way I've been taking it cause. (sic) It's like one, one time a day, one, two time a day," but that he did not take it the day of the hearing because "I was, I was, if I would had I would be going to sleep and this is important." (TR 25-26) Plaintiff also points to his application for benefits where he listed "hydrocodone" and "oxycodone" as having been prescribed by Dr. Boucree, and stated that he listed dizziness as a side-effect of both those medications on his application. (rec. doc. 11, pg. 4, TR 144) Finally, plaintiff also cites to Dr. Lea's "warning" to plaintiff about taking Flexeril (muscle relaxant) at night due to possible drowsiness. (TR 255)

The objective medical evidence, however, indicates that no physician ever reported that plaintiff complained of any side effects from medication, whether it be dizziness or drowsiness, or limited his ability to work due to side effects of any medication. Except for plaintiff's application for benefits and his own hearing testimony, the medical evidence is devoid of complaints of side effects, or any changes in plaintiff's medication due to any side effects. Plaintiff also has misconstrued Dr. Lea's "warning." Dr. Lea recommended that he "would suggest we go ahead and keep him on Flexeril at bedtime only with

drowsiness warnings . . . He can also use Ultram at night when he is not working at night. He is to use that at bedtime to avoid drowsiness." (TR 255) There is no indication in Dr. Lea's records that he explained the possible side effects of medications to plaintiff because plaintiff already was experiencing side effects; the records simply reflect that the prescriptions were to be taken at bedtime, not during any time the plaintiff might be working, and were accompanied with the standard "warnings" common to these medications. Moreover, plaintiff's hearing testimony indicates that he visits friends and family, and sometimes drives, taking breaking every 20 minutes to stretch. He also testified that he goes to church often and nightclubs sometimes, and can follow and understand the storylines of the television shows he watches. Plaintiff did not testify that he could not participate in these activities because of the side effects of his medication. Finally, plaintiff fails to cite to any objective evidence in the record that reflects that plaintiff was taking "significant medications" which were disabling to his ability to work. Plaintiff's arguments in this regard are without merit.

### *Issue 2 - Closed Periods of Disability*

Plaintiff argues that the ALJ had a duty to make a determination regarding a closed period of disability under Social Security Ruling 82-52, and was required to present a "specific rationale if he finds that there is a disability of insufficient duration." (rec. doc. 11, pg 7) Plaintiff states that the ALJ's finding that plaintiff was not under a disability through the date of the decision is "patently wrong ," and by "taking the Administrative Law Judge's finding to its logical extreme, that would mean that Mr. Sims was not disabled from working on the day that he underwent back surgery!" *Id.* Plaintiff further argues that the ALJ

should have determined that he was disabled from November 20, 2005, until the July 25, 2008, surgery.

Plaintiff's arguments do not comport with the meaning of "disability" as defined by the Social Security Act, or reflect the circumstances under which SSR 82-52 becomes applicable. The Social Security Act provides for the payment of benefits to persons who have contributed to the program and "who suffer from a physical or mental disability." *Loza v. Apfel*, 219 F.3d 378, 390 (5th Cir. 2000), *citing* 42 U.S.C. § 423(a)(1)(D)(1991). As used in the Act, the term "disability" is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period not less than twelve months. *Id., citing* 42 U.S.C. § 423(d)(1)(A); *Bowen v. Yuckert*, 482 U.S. 137, 140, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987); *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1987). In order to determine whether a disability exists for purposes of the Act, the Commissioner must weigh the following elements of proof: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) the claimant's age, education, and work history. *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991).

Thus, the disability must be expected to endure for more than twelve months. There are, however, circumstances wherein the reason the claim is denied is because the disability will not meet this duration requirement, and this is when SSR 82-52 becomes applicable. Social Security Ruling 82-52 explains the handling of certain claims that are

denied *because they were of insufficient duration*. In other words, there was a disability, but it did not last more than twelve months. The Policy Statement reads, in pertinent part:

> ***"Duration of impairment" under title II and title XVI refers to that period of time during which an individual is continuously unable to engage in any SGA, or any gainful activity*** . . . because of a medically determinable physical or mental impairment(s). . . .It extends from the date of onset of "disability" to the time the impairment(s) does not prevent the individual from engaging in SGA (or any gainful activity as appropriate), as demonstrated by medical evidence or the actual performance of SGA. . . .
> . . .
>
> ***When the evidence shows that at 12 months after onset the individual's impairment(s) did not or will no longer meet or equal the Listing*** . . . or that the individual is or will be able to return to SGA within 12 months after onset . . . a ***finding that the individual is not disabled should be made on the basis that the duration requirement is not or will not be met.*** Adjudication on the basis of "insufficient duration," therefore, indicates that a claim which would have been allowed must instead be denied because the claimant's impairment was not or will not be disabling for at least 12 months.

Social Security Ruling 82-52 specifically states that *denial for insufficient duration* is applicable in all cases in which the impairment(s) was or is of such severity that the claimant was or is unable to engage in any SGA (or any gainful activity); but by the end of 12 months, the impairment is, or will be, no longer of such severity as to prevent SGA. The key here is that the denial of a disability claim must be due to the insufficient duration of the disability, which is not the case here. Here, the ALJ determined that there was no period of disability as defined under the Act, not that there was a disability but it was of insufficient duration.

To reach this determination, the ALJ weighed the necessary elements of proof, and discussed extensively the objective medical facts, along with the diagnoses and opinions of treating and examining physicians. For example, for the time period between the

alleged onset date and the surgery date, the ALJ discussed the "multiple inconsistencies," between plaintiff's complaints and the objective medical evidence; plaintiff's self-limited activities;" plaintiff's "unwillingness to progress toward maximum safe level" during his functional capacity evaluation; physicians' reports of over-dramatization of pain; the lack of neurological, motor or sensory deficits during the consultative examination; and the EMG and nerve conduction study which revealed no major findings and "nothing from a post-traumatic standpoint to explain his legs giving way."

Thus, the ALJ determined that plaintiff's impairment did not meet, or medically equal, the requirements of any Listing, and plaintiff therefore was not under a disability at any time leading up to the hearing decision in his ability to engage in substantial gainful activity. Also, Ruling 82-52 states that the "denial determination or decision for insufficient duration should not be understood as independent of the sequential evaluation process. (See SSR 82-56 (PPS-81): The Sequential Evaluation Process).) Rather, it is necessary to follow the principles of sequential evaluation in assessing an alleged impairment according to the duration requirements of the law." Thus, the alleged impairment must first be determined to be a disability before Ruling 82-52 applies. Plaintiff 's arguments in this regard are therefore without merit.

### Issue 3 - Analysis of Maintaining Employment

Plaintiff states that his symptoms wax and wane, and he testified that he has "good days and bad days." Plaintiff contends that the ALJ was required to give separate consideration not only as to whether or not plaintiff could obtain employment, but also to his ability to maintain employment as set forth in the holdings in *Watson v. Barnhart* , 288

F3d. 212 (5th Cir. 2002) and *Frank v. Barnhart*, 326 F.3d 618 (5th Cir. 2003). Plaintiff asserts that the failure of the ALJ to do so requires remand.

Neither *Frank* or *Watson* are applicable to the case at bar. The court in *Frank* discussed *Watson* and its particular circumstances, and held that *Watson* set forth a separate consideration for maintaining employment where there was "a situation which, by its nature, the claimant's physical ailment waxes and wanes in its manifestation of disabling symptoms." The *Frank* court opined that under *Watson*, the intermittently recurring symptoms (waxing and waning) must be of "sufficient frequency or severity to prevent the claimant from holding a job for a significant period of time," and the ALJ "may explore this factual predicate in connection with the claimant's physical diagnosis as well as in the ability-to-work-determination." *Frank*, at 619. The *Frank* court opined that, in the absence of the establishment of a factual predicate, plaintiff's ability to maintain employment is subsumed in the RFC determination,³ and no separate finding as to the ability to maintain employment was required. *Frank,* at 619-620.

Plaintiff testified that he has "good days and bad days." However, any "allegations that an impairment causes good days and bad days do not by themselves require an explicit finding on maintaining employment." *Perez v. Barnhart*, 415 3d 457, 465 (5th Cir. 2005) This allegation is insufficient to bring plaintiff's case "with the realm of disablement envisioned by the *Frank* court. It is axiomatic that the pain from any type of ailment will very in intensity, especially the farther one gets from treatment that alleviates pain." *Perez,* at 465.

---

³By definition, the RFC is a measure of plaintiff's capacity to do physical and mental work activities on a regular and sustained basis. 20 C.F.R. §404.1545, SSR 96-8p.

The medical evidence is devoid of any physician's opinion that plaintiff was disabled from all employment due either to his impairment, the side effects of medications, or any indication that plaintiff's ailment was one with waxing and waning symptoms. On the contrary, the record evidence indicates that plaintiff "weaned himself off narcotics," and was "extremely satisfied" with the results of the lumbar decompression and fusion, evidence not disputed by plaintiff. (TR 12) Thus, plaintiff has failed to establish the necessary factual predicate that his symptoms wax and wane. Without a factual predicate, which necessarily includes the objective medical evidence, the ALJ had no obligation to provide a separate finding on the ability to maintain employment. Plaintiff's argument is therefore without merit.

## *Issue 4 - Evaluating Credibility*

Plaintiff next argues that the ALJ discounted plaintiff's credibility without stating what portions of plaintiff's testimony he did not find credible. Plaintiff characterizes the ALJ's evaluation as "general and vague" and "conclusory," and contends that the ALJ "must articulate reasons for discrediting the testimony and providing the inconsistencies." (rec. doc. 11) Plaintiff cites to a case from the Eighth Circuit for this contention, and argues that the ALJ's failure to provide the inconsistencies leaves this reviewing court no basis to consider whether the proper factors were considered and to determine if the appropriate legal standards were applied. In the Fifth Circuit, however, the ALJ's duty is to make affirmative findings regarding a plaintiff's subjective complaints when making a credibility determination. *Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir.1994) (*citing Scharlow v. Schweiker*, 655 F.2d 645, 648- 49 (5th Cir.1981)) Also, allegations of pain must be

corroborated by objective medical evidence. *Wren v. Sullivan*, 925 F.2d 123, 128 (5th Cir. 1991); *Houston v. Sullivan*, 895 F.2d 1012, 1016 (5th Cir. 1989). In judging a claimant's credibility, the ALJ can consider such things as medical reports, the claimant's daily activities, and the medications the claimant is taking. *Griego v. Sullivan*, 940 F.2d 942, 945 (5th Cir. 1991). "The ALJ must weight the objective medical evidence and assign articulated reasons for discrediting the claimant's subjective complaints." *Pineda v. Astrue*, 2008 WL 3341022 (5th Cir. 2008); *Falco*, at 163.

Moreover, while it is technically true that the ALJ must give specific reasons for his credibility determination, "neither the regulation nor interpretive case law requires that an ALJ name, enumerate, and discuss each factor in outline or other rigid, mechanical form. It suffices when the administrative decision is sufficiently specific to make clear that the regulatory factors were considered."[4] In this case, the decision is sufficiently clear in that while the ALJ did not give enumerated, specific reasons for his characterization of the plaintiff's credibility, he did consider the plaintiff's subjective complaints in the context of the objective medical evidence.[5] Further, the ALJ clearly discussed the inconsistencies between the objective medical evidence and plaintiff's subjective complaints. Also, in the absence of uncontroverted medical evidence which shows a basis for a claimant's pain, the ALJ's "evaluation of the credibility of subjective complaints is entitled to judicial

---

[4] *Prince v. Barnhart*, 418 F.Supp.2d 863, 871 (E.D.Tex.2005), *citing Shave v. Apfel*, 238 F.3d 592, 595 (5th Cir.2001).

[5] The law in the Fifth Circuit is that while an ALJ must consider a claimant's subjective complaints, he is allowed to examine the objective medical evidence to test the claimant's credibility. *Johnson v. Heckler*, 767 F.2d 180, 182 (5th Cir. 1985).

deference if supported by substantial record evidence." *James v. Bowen*, 793 F.2d 702, 706 (5th Cir.1986).

Here, the ALJ found that while the plaintiff's medically determinable impairments could "reasonably be expected to produce the alleged symptoms," the plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (TR 13) In reaching this conclusion, and as noted elsewhere in this Report, the ALJ acknowledged that the plaintiff sought treatment numerous times for his back pain, but noted that plaintiff reported that he "weaned" himself off narcotics, and was "extremely satisfied" with the results of the surgery. (TR 12-13) The ALJ noted that the FCE was not an accurate assessment of plaintiff's functional capacity because there were multiple inconsistencies due to plaintiff's unwillingness to progress toward maximum safe levels during testing. (TR 11) The ALJ also specifically discussed plaintiff's "own admission of the performance of numerous physical and mental activities," the good results from the back decompression and fusion," and the lack of significant medications. (TR 13) The medical opinions by plaintiff's treating physicians or by any other medical provider are devoid of any diagnosis or comment that plaintiff's degenerative disc disease of the lumbar spine was severe or disabling, or that either his pain or alleged medication side-effects substantially limited his ability to perform vocational activities on a sustained basis. The physicians noted that plaintiff complained of pain, but opined that he over-dramatized the pain and self-limited his activities. More specifically, the objective medical evidence does not support plaintiff's subjective complaints of disabling pain in that there were no

neurological, motor, or sensory deficits, or findings on the EMG, nerve conduction study, or other studies that would explain his symptoms to the extent alleged by plaintiff.

Thus, in reviewing the decision as discussed herein, it is difficult for the court to ascertain exactly what the plaintiff contends were not articulated reasons for the discounting of some of plaintiff's testimony. The plaintiff seems to be arguing that since his statements are consistent, they therefore must be accepted in their totality. However, these statements are subjective by nature as they relate to an individual's own perception of his condition, whether or not there is an objective reason for the perception. Moreover, the consistency of an individual's statements is not the issue; the issue is whether these statements are corroborated by the objective medical evidence. The ALJ is not required to give subjective complaints precedence over the objective medical evidence. *Carry v. Heckler*, 750 F.2d 479, 485 (5th Cir. 1985). Otherwise, every claimant would receive benefits and there would be no need for the determination process. To the contrary, a claimant's subjective complaints may be discounted by an ALJ if they are inconsistent with other evidence in the record. *Dunbar v. Barnhart*, 330 F. 3d, 670, 672 (5th Cir. 2003). An ALJ may find, from the medical evidence, that an applicant's complaints are not to be credited or are exaggerated, too. *Johnson, supra*, 767 F.2d at 182. In this case, the ALJ's analysis of the objective evidence as it related to plaintiff's complaints underscored his determination of plaintiff's credibility as intended under applicable rulings and regulations, even though he did not name or discuss each factor that led to his credibility determination. The countervailing evidence in the medical records, which is at odds with plaintiff's testimony regarding the severity and frequency of his back pain and medication side-

effects, provides sufficient evidence to support the ALJ's credibility determination regarding plaintiff's complaints, and the ALJ thus adequately explained his reasons for discounting plaintiff's subjective complaints about his symptoms. *Falco*, at 164. Plaintiff's arguments are without merit.

*Conclusion*

Although the ALJ did not reach a result that was favorable to the plaintiff, his determination was well reasoned and supported by the substantial evidence in the record and was reached using the proper legal standard.

## RECOMMENDATION

For the foregoing reasons, the Magistrate Judge recommends that the decision of the Commissioner denying benefits be affirmed, and that the claimant's complaint be **DISMISSED**.

Signed in Baton Rouge, Louisiana, on .July 11, 2011

**MAGISTRATE JUDGE DOCIA L. DALBY**

# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**GREGORY SIMS**

**VERSUS**                                            **CIVIL ACTION NO. 10-00086-BAJ-DLD**

**MICHAEL J. ASTRUE, COMMISSIONER
OF SOCIAL SECURITY**

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U.S. District Court.

In accordance with 28 U.S.C. §636(b)(1), you have fourteen days from date of receipt of this notice to file written objections to the proposed findings of fact and conclusions of law set forth in the Magistrate Judge's Report. A failure to object will constitute a waiver of your right to attack the factual findings on appeal.

**ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.**

Signed in Baton Rouge, Louisiana, on .July 11, 2011

                                                **MAGISTRATE JUDGE DOCIA L. DALBY**